Our first case of the morning is number 24-10028, United States v. Kerby Joseph. Good morning and may it please the Court. Ebony Blendman, Assistant Federal Defender for Mr. Kerby Joseph. Your Honors, this is a straightforward case. Mr. Joseph's appeal is resolved by this Court's recent decisions in Horn and Cluj. Under Horn, we concede that the District Court did properly consider whether Mr. Joseph intended loss, but Horn tells us also that loss is unambiguous. And where the text is plain and unambiguous, any deference to the commentary is unwarranted. And Cluj shows us a really helpful example of that. We see there an analogous situation where this Court held in another unambiguous guideline that the sentencing court cannot defer to a special rule like the District Court did here. Under Horn and Cluj, this Court should vacate Mr. Joseph's and remand for re-sentencing. And so what... Can I ask you, what would a remand look like? What would you recommend a remand look like? Let's assume I agree completely with your legal analysis. What should we do on remand? This case should be remanded with the direction for the District Court to determine loss, actual or intended, on the basis of the record as it is now. I don't think the government, because you, I mean, both sides really were operating under the misimpression of what the law was, and it's neither of your fault. It sort of was unsettled. You don't think the government and you should be given an opportunity to litigate anew what the intended loss would have been? I don't, Your Honor. I say that because we filed our objections challenging the reliance on the commentary. The government was, of course, well aware of that and decided to proceed in relying on the commentary and chose not to offer any additional evidence. Do you think we have the power or authority to issue a remand for just a new hearing on what loss is? And it may be that the government can't present anything, but do you think we at least have the authority to do that if that's what we decided to do? Yes, Your Honor. I believe the court does, and that is because the issue here would be an error in guidelines calculation, which would be a procedural error. I want to make sure I understand your position. Your position is a horn requires this panel to find it's ambiguous or not ambiguous? Yes, Your Honor. Can you cite me to where in horn there's such a holding as opposed to dicta? Yes, Your Honor. Okay. I know horn said you can use intended loss. I mean, that's clear. That was the issue, actual versus intended. But it go further and say intended loss is unambiguous, not loss. So what horn says is that loss is unambiguous, that it unambiguously includes actual and intended loss. Okay. But here we have to go further. The issue in horn was whether it loss meant actual or intended. And what we have to do here, we have now in the text, we have a definition of loss as actual or intended, right? In the text of the guideline now. Yes, Your Honor. And further in the definition of intended loss, we have loss that has not yet occurred, right? In the definition of intended loss. Yes, Your Honor. In the guideline, we have a textual definition. Intended loss is loss that has not, includes loss that has not yet occurred, correct? That is correct, Your Honor. Okay. So why is it not genuinely ambiguous, which is what the requirement is, to figure out what loss, intended loss that has not yet occurred? I'm focusing on the word intended. So when you put it together in the text, why is that not ambiguous about what that encompasses? That would not be ambiguous, I would say, because the plain meaning of those words tell us exactly what it means. Loss that was intended, that hasn't yet been realized, and that is something that could be determined on the basis of evidence, that could be determined on the basis of communications, of messages, of notes, ledgers, things of that nature. So here, none of the credit cards or the stolen items had been used, is that correct? From the record, that is correct, Your Honor. Okay. And how would you go about finding, in that situation, what the intended loss was? Would you look at the limits on the cards, for example? Would that be permissible? Forget about whether we have remand authority or not. I actually think we clearly have discretion one way or the other, but that is to be determined. How would you go about, could you say it was the maximum limit on the card, that was the intended loss, to use the card to its fullest, that would be permissible? On a remand, I think the government would need... Let's forget about a remand. We're going to have to write a case about what you do here. Can you look at the $500 rule or can you not? So, we need to give some idea about how you would go about finding the loss. So, could you look at the limit of the card, would that be permissible? As the intended loss? The government could offer that as one factor, if it felt appropriate. I think as with any sentencing enhancement, there are any number of factors or pieces of evidence the government could look to and we, of course, as a defense, could rebut. I'm not so sure that getting rid of the $500 rule is going to help defendants so at all. That's why I want to know what you would do on a clean slate. You're at a new sentencing hearing and none of the cards have been used. How many cards were there here? There were 340 access devices that Mr. Joseph... Yes, and they all had at least a $1,000 limit, right? That we do not know from the record. Okay. Well, I know we don't know from the record, but you probably know from the evidence. I wouldn't say that, Your Honor, no. Okay. But you would say it would be permissible if the district court wanted to look at the limits on all those cards. That was the intention, to use them up to whatever it was permissible. I think the court could consider the limits on the cards. The court could also consider communications. For example, we saw in what could be a similar case because it involved debit and credit cards out of the Ninth Circuit. Those cards likely had much higher limits, but it was the scheme, the plan of that conspiracy to charge only $15 to $30 to avoid any sort of detection. And so the limit might be one factor, but other factors... Well, the Ninth Circuit case looked at Stimson. I mean, they went into Stimson. They didn't even follow the recent Supreme Court case. Understood, Your Honor, but I think it's in one of the additional factors that the court could look at in determining costs, being a credit line, but separately, whether there's any plan or agreement or evidence of a plan or agreement to use certain amounts. Any attempts, in fact, to swipe or to make specific purchases, those could also be instructive to the district court. Could the court also look at all of the research behind the commentary that caused it to come up with a $500 rule? I thought of this as a possible resolution that the court could say, look, the Sentencing Commission has researched this. They've come up with the average use is $500, and they came up with that after a lot of study. Would it be permissible? I know we can't go look at the commentary. They can't apply the commentary, but could they look at the research behind the commentary and make a determination that $500 would be within the realm of permissible fact-finding on this type of case? Would that be permissible? I think that would depend at what point the court is considering that research. If it's considering that... I'm talking about de novo. We're looking at it. Either you have a rehearing or it's a new case, because we've got to explain what you're going to do now. If you get rid of the $500 rule, you're asking us to say you cannot use the $500 rule, right? Yes, Your Honor. Okay. And that's as a presumption because we can't use the commentary. I'm asking you, could you look at the research the commission did and say, I find under these facts and circumstances that there's so much research about the average that I'll use this average? The court could not do that in calculating the guidelines, and that is because the text of the guidelines is clear and it directs the court to calculate actual or intended loss. And that does not include a multiplier, a fictional number that we see only in the commentary. The court perhaps could in its 3553A analysis, if it found based on the specific facts of the case that that research had any bearing, the court could perhaps consider that as the court is free to consider many things at that point of the analysis. But as it relates to the guideline calculation, it could not. I'm just trying to figure out how you determine it when there's nobody talking about, well, we're going to do $100 a card or $500 a card. So it still would be permissible to use the maximum limit on the card then. I think instead of the shortcut really that the commentary is offering, the government, as they do in any case when they're trying to prove up an enhancement, would need to present evidence. Thank you. You've answered my question. And I see that my time is up. Good morning, Your Honors. Michael Brenner on behalf of the United States. Great to be with you. So I'd like to start sort of where Judge Hall left off. I think Judge Hall made an important point here about Horn. It did say that the word loss was unambiguous, but it did not say anything about the ambiguity in the new text that has been added to the guideline. Horn does tell us that we do have to apply that new text that's in the guideline because it is a clarifying amendment that applies on direct appeal. And when we look to that new text, we have ambiguity, ambiguity that leaves room for the Sentencing Commission to interpret and clarify what the district court is to do. So we have new definitions that are in the text now, and essentially it boils down to this. Intended loss is harm that is monetary or otherwise readily measurable in money that the defendant purposely sought to inflict, even if unlikely or impossible to occur. And so this can mean, it leaves plenty of uncertainty for the district court, but it's susceptible to more than one reasonable meaning. It can mean only the unauthorized charges that a defendant intended to make, as it's certainly a reasonable interpretation that he only purposely sought to decrease his victim's account and increase his account. Or it can mean to include also indirect monetary harms, the types that the Sentencing Commission considered when it did its studies in 99 and 2000. It can mean that as well, such as the cost to repair damaged credit ratings, to replace cards, to restore access to accounts. That's also a reasonable interpretation that the defendant sought to inflict those harms on the victim as well by purposely moving forward with the crime. Dictionary definitions don't help us resolve this ambiguity. If we look to the dictionary definitions, we can look to, and I do realize that this isn't something that we had in our briefing. The case has sort of evolved since we had the briefing, now that we have Horn and the amendment. But if we look to the dictionary definitions, we have the word purposely. That can mean an express purpose defined by Merriam-Webster. It can mean by design, Oxford English Dictionary. Or it can mean what Black's Law Dictionary says, which is to deliberately engage in prohibited conduct to cause social harm, the kinds that a victim would suffer those indirect monetary harms as well. Or it can just mean on purpose, intentionally. The Oxford English Dictionary defines it that way. So we have this ambiguity in the text as to what exactly we're talking about the capturing here. And a district court is left unable to apply that language without some clarification from the Sentencing Commission. We also have, we can... So what is the government suggesting we do about that? What would you like us to include in the opinion? We would like the court to say that the text that is now in the commentary is ambiguous, and that the sentence, it left room for the Sentencing Commission to interpret that text, and that the Sentencing Commission's interpretation of it in the $500 per access device rule is a reasonable interpretation of that text. It fits right within the zone of ambiguity. We've already established that it can mean only the charges that a defendant would seek to make on those cards, or it can mean those charges and also the indirect monetary harms that the Sentencing Commission discovered in its studies that victims suffer as well. It's a reasonable interpretation because importantly in those studies, the Sentencing Commission discovered those indirect monetary harms, they're there and they need to be accounted for. But they can be accounted for adequately by simply raising the floor from $100 to $500. And then they said that anything in addition to that for indirect monetary harms would not meaningfully change the level of culpability, because it's not going to meaningfully move you up the scale of loss. So anything above that would be the additional unauthorized charges that a defendant would seek to make. And that's exactly what the rule does. It comes in and it says, here's your floor, here's your base level of culpability for this type of offense, district court. Anything above that, of course, this is not going to cover every case. You may have evidence that even in a case where a defendant didn't have the opportunity to make the charges they sought to make before they were stopped by law enforcement, you may have evidence of what they would have tried to make on them. So the $500 sets a floor, it does not set a ceiling. You can go above that, but what you would be counting above that would be only the unauthorized charges they would have intended to make. And that's what the text of the commentary says. And so we think that is a reasonable interpretation based on the Sentencing Commission's two-year-long studies. Remember, these were studies commissioned by Congress. The question here is whether it's reasonable. The question here is step one, is to whether there's a genuine ambiguity. That's what we need to focus on. Can you address Judge Luck's question? Let's assume for sake of argument that the court disagrees with you. What should the court do in this particular situation? Should the court disagree with the government's position? At step one. I think step two and three are easy once you get over step one. If it's genuinely ambiguous, it's clearly within the zone of ambiguity and it's clearly reasonable. So we got to deal with step one. Sure. The government would agree completely with your honor. At step one, if the court should disagree with us that the language is ambiguous and it should find that the language is unambiguous, we agree with your honor that the court would have discretion whether to send it, to remand it for a new hearing, a new sentencing hearing to calculate loss under the new guideline text as it stands. And we, our position would be that the court should exercise that discretion to allow the parties, not just the government, but the parties to argue to the court what the correct calculation of law should be for us to put on that evidence, for the defendant to test that evidence, and for the court to make the appropriate findings under the new guideline text, which the court would be saying is unambiguous. But of course, our position, we believe we're right that it's ambiguous and that the court can still refer to the $500 rule. So I would like to focus on that ambiguity. And if the court has any further questions about the text ambiguity, I'd love to answer them. Well, her argument is you shouldn't have a second bite at the apple that you, uh, at sentencing, they objected, you went with the $500 rule. Uh, and so you shouldn't be given a second chance. What would you say about that? Well, I know what I would say. Sure. So we were, we were operating, we were operating, uh, at that time under very different law. This is before we'd even knew there was an amendment coming at the time we were operating precedent. We didn't even have horn. We didn't, we didn't have horn. Um, but I will also say this was the sixth out of seven defendants sentenced, I believe. And the district court had already made the same ruling over and over and over again, intended loss applies. We can apply the $500 rule. There was no reason for us to waste any of the court's time and resources to put on unnecessary evidence. So that is why we wouldn't believe it's a second bite at the apple to us. It'd be a first bite at the apple because we're operating under new guideline text and a new published case from, from this court. And if the court doesn't have any, I have one last question. So assume you're at an evidence, you're hearing whether DeNovo in another case or on remand in this case, and we don't have the $500 rule, uh, is the limit, what the credit card limit is, absence evidence of, and I think she makes a good point, that could be part of the wiretaps or part of the plan or something that we only going to do 50 because we don't want to get caught. So we'll do 100 on this card. We'll do 100 on the next card. Um, what, what would you say about how, what you could go? Could you use the limit? I mean, is a reasonable, um, estimation of, uh, what the intent was? Cause it, the guideline now in the text says, even if it's unlikely to occur, see, I don't know why defendants want this rule, uh, get rid of the $500, but that's their choice. Precisely, Your Honor. Even if it's unlikely or impossible to occur. So first of all, this assumes that the text is unambiguous because we think part of that, all of this, all of this. Absolutely. What do we do if it's right? I promise you, we understand your position. Part of that ambiguity is we don't know where to draw those lines. We don't know. Should we go all the way up to the limit? I think how hard it is to prove it shows part of the problem here, but that's neither here nor there. I'm just trying to understand cause we now got clues here and we got horn and I don't know, we got all this text, whatever. I don't think there's anything plain about this text, but we have all that precedent. Plain text. Yes. Okay. So assuming it's unambiguous, how is the court supposed to, what is the court supposed to look at? I think Your Honor's asked about the types of evidence and whether it would go all the way up to the limit. Do you think it'd be permissible to use the credit limit? That's what they certainly intended in stealing these cards. It would certainly be one of the pieces of evidence that the court would need to look at, but the court would then need to make a determination whether it's, whether by a preponderance of the evidence that shows the defendant's intent to go all the way up to those limits. I can tell Your Honor, in most cases, that's not what happens. And so I think what the court would look at, it would look further to see, was there a, a, was there activity before this we can look at? How did, what did they do with the, with the access devices before they got to the ones we're talking about here where they didn't even get to use them? You might have that sort of evidence. You might have the type of... Yeah, a lot of cases you've got some card use before, so you could look at that. But I'm talking about that a lot of cases are, are, are arrested before there's much done. Absolutely right. And in that type of case, I think Your Honor would be right that we would have to go into the, perhaps the studies or perhaps put on an expert and get some, put before the district court the type of evidence that it would need to figure out what does, what, what circumstantial evidence can the, the district court look at to figure out what does a defendant who does this type of conduct, who steals these things, what do they intend to do with them? That's where we can get into those sorts of averages. If that's... You've answered the question. I don't have anything else. Thank you. Thank you, Your Honor. And... Can I ask one question? Of course. Can you address Ricardi? Why, why do you think the Sixth Circuit, I think, got it wrong? Because they were, they were, they were saying, it wasn't within their zone of ambiguity to have a numerical floor. They, they were saying, well, you can never, if you, if you're just going to say an ordinary meaning of this could include a numerical floor, they said that, that can't be. No one would understand it that way. What we would say is some, an ordinary person familiar with the studies, familiar with the data on how defendants use this sort of information would say, well, the loss would be at least this amount, if they're familiar with all that information. So we just think the Ricardi got it completely wrong because they started from the wrong place. And I'll also point out the Sixth Circuit itself in Phillips said, I know that Ricardi made the point about it not being in, in that zone, but then Phillips said, well, we really didn't mean that. You can have it just because the Sentencing Commission offers a numerical floor does not mean that that's not within the zone of ambiguity. You can absolutely do that if you are talking about a scientific or technical area. And that is what we had in, in Phillips when we got to, you know, they, they said that the, the images was ambiguous and that's why they were able to then say that the 75 to 1 fell within that zone. But because, but the fact that it was a numerical interpretation did not mean it couldn't be reasonable. They said it was reasonable. And other courts have, have said that too. We, we had the diagnosis case. I forget the name of the case was the DC Circuit. But in that case, what they, what the agency said there is we have to look at how diagnosis is interpreted by the experts. When we look at the data there, we see, they say, well, you have a diagnosis. If you're above a certain amount, that sets a numerical floor. We have the same thing here. The text does not answer the question. And so what the Sentencing Commission did in interpreting that ambiguity, it took two years of studies to look at what, how do these types of cases unfold? What are the types of harms involved? And is there a floor? They found there was a floor. They then submitted the three types, the three possible floors that they found for public comment. And they went with the most reasonable interpretation, which was the $500. Let me go back to the Sixth Circuit. So if you do this all the time, the Sixth Circuit said we need not decide the first step. We don't decide whether the meaning of the word loss emerges from potential options or anything. They totally skipped the first step. They said we'll just assume it, basically, and went to whether it was the zone of ambiguity. And they didn't even analyze what the ambiguity was because they never looked at the text. And they said we need not decide step one. So that's part of the problem. I'm not saying the rest of it has not got some interesting analysis, but they didn't do the first step. And they even said we don't do this first step. That is true. There certainly wasn't a holding there on the first step. But as part of their analysis, they were starting from a place of recounting the definitions as they had been relayed by, I think, the Third Circuit and banks at that point. And their take on it was an ordinary person would never come to that $500 floor. You've answered my question. Thank you. I see my time has expired. If the court has no further questions, the government would ask that the court affirm. Thank you. And have a good weekend. I'd like to start by responding to the idea that the additional, the newer language in the commentary has, in some way, injected ambiguity. It's not newer language in the commentary. It's the text. Excuse me. Yes. Yes, Your Honor. You're doing a great job. You did a fabulous job. I just was going to stop you. No, that's exactly correct, Your Honor. Because if it was a commentary, we wouldn't be talking about it. We got to talk about the text. Absolutely. Thank you. This new language in the text has not injected any ambiguity. I think what is notable is that Horn, this court's decision and analysis of 2B1.1, and specifically the word loss, comes after Amendment 827 and this language has now found its way into the guideline text. And the court still finds, post the amendment, post the new language, that the meaning of loss is unambiguous and that it does unambiguously mean actual and intended loss. The other language that we've heard, the word purposely, that language has plain meaning, is commonly understood. I think in any moment in jury instructions, we direct juries or the court to make determinations about intent, about someone's purposes to do. And so that language is not the basis for any ambiguity. I think what it boils down to and what the government's argument essentially is, is that this will require more. This is more difficult. And that may be the case, although I don't believe so. Because in these fraud cases, they are very often, one, investigated by federal law enforcement agencies. They are investigations of years. In this case, Mr. Joseph's phone was searched three years prior to his indictment. And so by the time of sentencing, they have the evidence that they need. And so I don't think this is any more difficult than what the government has to do in any other case. But even if it was so. Do you think the facts of the prior conviction for similar conduct could be used as evidence of intent for this particular scheme, even though it had been forwarded before they were able to complete it? I think it would turn on the specific facts, on the date, on the individuals. It would have to. But it could, right? It could, if there was a showing that there was something from prior conduct that we could extrapolate, present or future intent. As it, and going back to the government's argument about what they would seek to be able to do, should we be back at a resentencing, I think it is absolutely the case that the law has developed since Mr. Joseph was sentenced and since this appeal has been filed even. But the issue was the exact same, and the government was absolutely on notice. Can I ask about something that Judge Hull brought up? So Judge Hull has mentioned a few times now about why you would want this rule, because it may not work to your advantage. And it made me think, I was on the Kluge panel. And in that case, the remand instructions actually were not to go back for an evidentiary hearing. Because in that case, the defendant specifically asked us not to do that. Because the defendant knew that if we applied the rule that we ended up applying there, he would be tagged with way more images than he was tagged with under the 1 to 75 rule for videos. Is there a concern that if we go back and, for instance, let's say that we use the max, the district court uses the maximum for this, that the loss amount here may be huge compared to $500? I mean, some credit cards are $10,000 maxes or $20,000 maxes, depending on the consumer. If you have 300 credit cards here, and it's $10,000 or $20,000 each, that loss amount is going to be way more than was done below. Is there any concern that you have for your client about that? Your Honor, my answer to that would be, there are any number of procedural safeguards that exist in the district court. The court is never required to make a loss finding with laser precision. They need to do so as a reasonable estimate. And so we've talked about loss, kind of balance limits, and we've talked about kind of patterns of usage and prior usages, perhaps indicia of intent. And so all of those things would come before the court, the district court, with the procedural safeguards in play. But even that, even that concern cannot subvert the plain text which directs us. I don't disagree with you, but that doesn't, we still have to do a remand instruction. So you're right that as a matter of law, we have to do what we have to do, but that doesn't mean we have to remand it for anything more. And I would just ask that you might want to have a conversation with your client about the implications of a remand for an evidentiary hearing here, and then let us know. You don't have to if you don't want to, but that might be something you might want to do with your client. Understood, Your Honor. I will perhaps take that up in a future 28J, but seeing that my time is out, given the court's clear rulings in Horn and the application in Kluge, we would ask the court to vacate this conviction. Thank you. Thank you, counsel.